UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LESTER BELL,

            Petitioner,            Case Number 21-10417
                                                   Honorable David M. Lawson

v.

MATT MCCAULEY,

            Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Lester Bell was released on parole from a prison sentence imposed by a Michigan state court for fleeing from the police and furnishing contraband to a prisoner. He was returned to prison as a parole violator. Bell challenged the parole revocation proceedings in the Michigan courts, contending that certain procedures used by the Michigan Department of Corrections violated his rights under the Due Process Clause of the Fourteenth Amendment. After the state courts rejected his arguments, Bell filed a petition for a writ of habeas corpus in this Court under 28 U.S.C. § 2254 without the assistance of a lawyer. Because the state courts reasonably applied governing federal law when they denied relief to Bell, this Court likewise will deny the habeas corpus petition.

I.

The proceedings in the state courts were summarized by the Michigan Court of Appeals in its opinion on direct review as follows:

> Petitioner was serving sentences for third-degree fleeing and eluding, MCL 257.602a(3)(a), conspiring to furnish contraband to a prisoner, MCL 800.281(1), and conspiring to furnish a cell phone to a prisoner, MCL 800.283a, when released on parole in May 2017. The terms of petitioner's one-year parole included a prohibition against owning or possessing a firearm of any type and prohibited him

> from being in the company of anyone he knew to possess firearms, ammunition, or firearm components.  On February 3, 2018, petitioner performed at an event at the Coleman Center in Romulus, Michigan.  Two Romulus police officers were called to the Coleman Center regarding altercations.  The police officers observed petitioner and a female, Amanda Huff, walk toward a parked Hyundai Santa Fe but move away from it to stand at a distance in freezing temperatures without coats for an extended period.  The police officers walked to the Santa Fe and observed what appeared to be a bag of marijuana in open view on the center console.  Their suspicions aroused, the police returned to their car which had been parked across the street out of sight and surveilled the Santa Fe until they observed petitioner and Huff walk to the vehicle.  Petitioner unlocked the vehicle with a key fob.  Huff sat in the front passenger seat while petitioner stood by the open door.  When the police officers approached, petitioner tossed the keys to the ground.  The police searched the vehicle and found what they believed to be marijuana and also three loaded firearms in the center console.  Petitioner denied any connection to the firearms and repeatedly told Huff that she did not know anything and not to talk to the police.  Investigation later determined that petitioner's friend, Danielle Gilliam, had rented the Santa Fe and also attended the event at the Coleman Center that night.  The firearms recovered from the vehicle were registered to three different people and two had been reported stolen.
>
> Petitioner was charged with three parole violations stemming from this event, but only the second charge, which alleged that petitioner violated the conditions of his parole by possessing firearms, is at issue in this appeal.  Following a formal hearing, an administrative law examiner (ALE) found petitioner guilty of this charge under a constructive possession theory.  The parole board revoked petitioner's parole and ordered that he serve a 60-month continuance.  Petitioner appealed to the circuit court, and the circuit court affirmed the parole board's decision to revoke petitioner's parole, but remanded the matter to the parole board for reconsideration of the "penalty/mitigation phase" of the revocation process.  On remand, the parole board again imposed a 60-month continuance.  This appeal followed.

*Bell v. Department of Corrections,* No. 349194, 2020 WL 1897436, at *1 (Mich. Ct. App. Apr. 16, 2020).

The Michigan Court of Appeals upheld the Administrative Law Examiner's (ALE) findings of fact and conclusions of law and the Michigan Parole Board's decision to revoke Bell's parole.  *Ibid.*  The court also addressed and rejected Bell's arguments that his constitutional rights were violated by the ALE's consideration of certain evidence.  *Ibid.*  The Michigan Supreme Court denied Bell's application for leave to appeal.  *Bell v. Dep't of Corr.*, 506 Mich. 1026, 951 N.W.2d 669 (2020), *reconsideration denied*, 507 Mich. 903, 956 N.W.2d 184 (2021).

Bell then filed his petition for a writ of habeas corpus, setting forth his arguments as follows:

> I. The ALE violated Bell's Sixth and Fourteenth Amendment Rights when she used ex-parte/false evidence (not on the record) to discredit Bell, deeming him a liar, resulting in an inevitably biased and partial verdict based upon suspicious presumptions that derived from the ALE's constitutional errors.
>
> II. The ALE violated Bell's Sixth Amendment right to confrontation, MCL 791.240(a)(5)(a) right to confrontation, MAPA's (MCL 24.282) right against exparte communications, and Fourteenth Amendment due process rights where she used false statements (not on the record) attributed to Bell by parole agents who Bell was not given a chance to confront, to find Bell guilty.
>
> III. The ALE again violated Bell's Sixth Amendment right to confrontation, Fourteenth Amendment due process right against ex-parte communications, and Fifth Amendment right where she went off record to question Bell about a statement he allegedly made to Detective Farhat, using these errors as suspicious behavior to complete a guilty finding.
>
> IV. The ALE violated Bell's Fifth amendment right to not self-incriminate when she used against him his usage of his right to remain silent, and his advisement to his friend to assert her Fifth Amendment, to conclude Bell was hiding knowledge of guns and build a character of untruthfulness against Bell.
>
> V. There was insufficient evidence to establish constructive possession. The ALE violated Bell's Fourteenth Amendment due process rights when she failed to establish the required element of knowledge and intent when she found Bell guilty of constructive possession.

Pet. at 3, ECF No 1, PageID.3. The Warden file a response that mostly reargues the State's position asserted in the Michigan Court of Appeals, addressing issues that are not before this Court. He adds, though, that some of Bell's claims were not preserved properly in the state circuit court and none of them warrant the issuance of a writ of habeas corpus.

II.

The Michigan Court of Appeals reviewed the Parole Board's decision under the State's Administrative Procedures Act, Mich. Comp. Laws §§ 24.201 *et seq.*, and determined that

substantial evidence supported the agency's decision. *Bell*, 2020 WL 1897436, at *2. That determination is not before this Court. The court of appeals separately addressed Bell's constitutional arguments, giving them fresh review, although it applied a plain error standard for one of them. *Id.* at *2-5. Bell challenges those determinations in his habeas petition.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering a petition for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). AEDPA provides a "highly deferential standard for evaluating state-court rulings." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). That means federal courts give the state court "the benefit of the doubt," *ibid.*, applying that "statutorily prescribed deference," *Michael v. Butts*, 59 F.4th 219, 225 (6th Cir. 2023) (citing 28 U.S.C. § 2254(d); *English v. Berghuis*, 900 F.3d 804, 811 (6th Cir. 2018)).

A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing

law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)).

All of Bell's claims address alleged procedural irregularities in the parole revocation process itself, which, he says, infringed his rights under the Due Process Clause.

"If state law entitles an inmate to release on parole, . . . that entitlement is a liberty interest which is not to be taken away without due process." *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991). The Sixth Circuit has held, however, that Michigan's parole system creates "no 'legitimate claim of entitlement to' parole, and thus no liberty interest in parole." *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979)).

Nonetheless, once parole is granted, a parolee has a liberty interest that entitles him to some due process protection in the parole revocation process. *See Morrissey v. Brewer,* 408 U.S. 471, 481-84 (1972). For instance, promptly after arrest for an alleged parole violation, the parolee must have a preliminary determination of probable cause to justify holding him for further proceedings. *Id.* at 485-87. Thereafter, the parolee must have written notice of the violation, disclosure of the evidence, the opportunity to be heard and contest the case (including confrontation rights), a neutral arbiter, and written findings that explain the decision. *Id.* at 489. The determination need not convince the arbiter beyond a reasonable doubt; reasonable grounds will do. *Id.* at 490.

Bell's claims deal with the second stage of the revocation process, that is, the final revocation hearing. "This hearing must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." *Id.* at 488. The Supreme Court left to the states the task of determining the precise procedures for parole revocation hearings. *Ibid.* But "the minimum requirements of due process" for a parole revocation hearing must "include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Id.* at 488-89. The procedures need not mimic the features of a criminal trial. *Ibid.* ("We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense."). Rather, the revocation hearing is a "narrow inquiry" where evidence that may not be admissible in a criminal trial nonetheless can be considered, such as "letters, affidavits, and other material." *Ibid.*

A.

Bell contends that he was not afforded a neutral decisionmaker because the ALE was biased against him. His conclusion is based on his belief that the decision was the product of "suspicious presumptions" derived from "false evidence." The state court of appeals did not address any claim of a biased decisionmaker, but it did find that the ALE's inferences were supported by the evidence and that substantial evidence supported her credibility determinations. *Bell*, 2020 WL 1897436, at *4 ("The record in this case does not support petitioner's contention that the ALE erred by concluding that he lacked credibility.").

To prove bias in this context, a party "must overcome a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin,* 421 U.S. 35, 47 (1975). The burden of overcoming the presumption of impartiality can only be accomplished with "convincing evidence that 'a risk of actual bias or prejudgment' is present." *Navistar Int'l Transp. Corp. v. E.P.A.,* 941 F.2d 1339, 1360 (6th Cir. 1991) (quoting *Withrow,* 421 U.S. at 47). Any bias or prejudice on the part of a decisionmaker "must be evident from the record and cannot be based on speculation or inference." *Ibid.*

Bell contends that the ALE was biased against him because she considered "false evidence" and deemed him "a liar." But he has not alleged any facts in the record that would allow a conclusion that the ALE was biased against him or that he was unable to defend the charges against him. There is no evidence that the ALE had any involvement in bringing the parole violation charges against Bell or was partial in any way to the parole agents. *Prince v. Straub*, 78 F. App'x 440, 441 (6th Cir. 2003). Bell can only point to the ALE's adverse ruling against him. But adverse rulings are not themselves sufficient to establish bias or prejudice that will disqualify a decisionmaker even in the context of a criminal trial. *See Mason v. Burton,* 720 F. App'x 241,

242-43 (6th Cir. 2017); *Hence v. Smith,* 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999). Bell is not entitled to relief on his first claim.

B.

Bell next contends that he was denied his right of confrontation and right against *ex parte* communications under the Sixth and Fourteenth Amendments when the ALE considered false, off-the-record statements made by his parole agents to find him guilty. He also argues that he was denied his right of confrontation and right against *ex parte* communications when the ALE went off the record to question him about a statement that he had made to a detective who did not testify at the parole revocation hearing.

The state court of appeals did not address the merits of these arguments, finding that Bell had waived them by not raising them in the circuit court. *Bell*, 2020 WL 1897436, at *4. However, the circuit court record shows that Bell did raise a claim that the parole agent who served his parole violation charges was not called to testify at Bell's revocation hearing even though Bell was confronted with a statement that he allegedly made to the parole agent but denied making. ECF No. 8-14, PageID.636-37. The Michigan Court of Appeals's waiver finding was not based on a reasonable determination of the facts.

However, there is another basis for finding that Bell's claim should not be addressed on the merits. The ALE offered to adjourn the hearing to bring in the parole agent who served Bell with his parole violation charges. Bell told the ALE that an adjournment was not necessary. Under those circumstances, review is discouraged under the concept of invited error. Invited error has been described as a "branch" of the waiver rule, although it is not the same, falling "within the continuum between forfeiture and waiver." *United States v. Woods*, 61 F.4th 471, 481 (6th Cir. 2023). "[W]aiver is the intentional abandonment of a known right, whereas invited error occurs

when a litigant 'contributes in some way to the district court's error without intentionally relinquishing his rights.'" *United States v. Akridge*, 62 F.4th 258, 263 (6th Cir. 2023) (quoting *Woods*, 61 F.4th at 481). So when a party "'provoke[s] the court' to reach a conclusion without expressly adopting that position, he doesn't intentionally abandon a right (waiver) or merely stay silent (forfeiture). Rather, he invites error." *Ibid.* (quoting *Woods*, 61 F.4th at 481; *United States v. Sharpe*, 996 F.2d 125, 129 (6th Cir. 1993)).

When a petitioner invites an error in the trial court, he is precluded from seeking habeas corpus relief for that error. *See Fields v. Bagley,* 275 F.3d 478, 486 (6th Cir. 2001). By declining the ALE's offer to adjourn the hearing so that the parole agent could be brought in to testify, Bell has waived review of his second claim.

Bell also argues that it was improper to cross-examine him about hearsay statements that he made to a parole agent and a detective, neither of whom testified at the revocation hearing. However, a parole revocation hearing is not akin to a criminal prosecution. Hearsay evidence may be considered by the hearing officer when determining that a parolee has violated his parole. *See Taylor v. U.S. Parole Comm'n*, 734 F.2d 1152, 1155 (6th Cir. 1984) (citing *Morrissey,* 408 U.S. at 489). Bell is not entitled to habeas relief on his second or third claims.

C.

Next, Bell contends that the ALE violated his Fifth Amendment right against self-incrimination by drawing an inference from his conduct after the guns were found by the police and his statements exhorting Huff to remain silent and not to speak to the police. When the Michigan Court of Appeals rejected this claim, it explained:

> It is unnecessary for us to determine to what extent the right against compelled self-incrimination applies to parole revocation hearings in this case. Assuming, without deciding, that the ALE could not consider silence that would be inadmissible in the context of a criminal prosecution, petitioner's argument lacks merit as a matter of

>law under the facts of this case. The ALE cited several reasons for finding petitioner's testimony unbelievable. In pertinent part, the ALE noted that petitioner "repeatedly told Ms. Huff, 'you don't know anything' and encouraged her not to speak to the police" after the guns were discovered inside the vehicle to which he held the keys and used to unlock the vehicle. The ALE concluded that petitioner would have no reason to make such statements, or engage in other suspicious behavior, if petitioner lacked awareness that the firearms were in the vehicle. The record reflects that petitioner voluntarily and spontaneously shouted statements to Huff. He did not exercise his right to remain silent, nor did the police compel him to speak against his interest. Petitioner's remarks were not the product of a custodial interrogation. The ALE could draw the negative inference of guilt from the evidence presented of petitioner's conduct and unsolicited speech. Petitioner admits that his advice to Huff did not arise in response to police interrogation. Although petitioner misconstrues the significance of that fact, it demonstrates that his statements were voluntary, rather than the product of interrogation or police coercion. Because the constitutional protection against self-incrimination is not implicated by voluntary statements, the ALE did not violate petitioner's rights in any manner by considering petitioner's statements to Huff and drawing reasonable inferences from his conduct and statements.

*Bell*, 2020 WL 1897436, at *3.

This determination reasonably applied governing federal law. It is true that the state cannot use a defendant's silence as evidence against him when he had been given *Miranda* warnings and he invoked his right to remain silent. *Doyle v. Ohio*, 426 U.S. 610, 619 (1976). But it also it true that a defendant can be cross-examined about his conduct and the statements he made voluntarily even after *Miranda* warnings were given. *Anderson v. Charles*, 447 U.S. 404, 408 (1980). And the Supreme Court has made clear that prosecutors in a criminal trial may use a defendant's pre-arrest silence as substantive evidence of his guilt as long as the defendant did not expressly invoke his right to remain silent. *Salinas v. Texas*, 570 U.S. 178, 183-84, 191 (2013); *see also Abby v. Howe*, 742 F.3d 221, 228 (6th Cir. 2014).

There is no indication in the record here that Bell was under arrest or had been advised of his *Miranda* rights when he tried to silence Huff or engaged in the conduct at the scene described by the ALE. Bell admitted that his advice to Huff was not provoked by police interrogation. Bell

voluntarily made these remarks without being questioned by the police. There is no evidence, and Bell does not allege, that he expressly invoked his right to remain silent. Bell is not entitled to habeas relief on his fourth claim.

D.

Finally, Bell argues that the evidence was insufficient to find him guilty of possessing a firearm and violating his parole. The Michigan Court of Appeals rejected this claim, recounting the evidence as follows:

> The evidence established that petitioner had the keys to the Santa Fe and exercised dominion and control over the vehicle by controlling access to its interior with the keys. He used the keys to intentionally access the vehicle. Petitioner did not just happen to be in the vicinity of the vehicle while someone else controlled it. Having control over the vehicle and unlocking the doors to access it and its contents constituted constructive possession of the firearms within the vehicle. The ALE could infer from petitioner's conduct before and after unlocking the vehicle, including his statements to Huff, that he had the requisite intent at that given time to exercise dominion and control over the firearms. The record does not support the contention that petitioner acted lawfully and only inadvertently came into close proximity to contraband.
>
> Based on the record, the parole board could properly rely upon the ALE's factual determinations which were based on competent, material, and substantial evidence on the whole record, as required under MCL 24.306(1)(d). The ALE did not commit a material legal error by applying the law concerning the constructive possession of firearms in this case. The ALE reasonably could infer from the evidence that petitioner had knowledge of the presence of the firearms in the vehicle and his control over the vehicle established that he intended to exercise dominion and control over them sufficient to establish that he had constructive possession of them. Considering the entire record, the circuit court did not err by affirming the parole board's decision to revoke petitioner's parole on the basis of constructive possession of firearms.

*Bell*, 2020 WL 1897436, at *5-6.

That reasoning comported with applicable federal law. A parole violation need not be proved beyond a reasonable doubt before parole is revoked. Instead, it is proper to revoke parole

when the evidence establishes reasonable grounds to do so. *Brown v. Jansen*, 619 F. Supp. 2d 372, 386 (W.D. Mich. 2009) (citing *Morrissey,* 408 U.S. at 490).

Under Michigan law, possession of a firearm can be either actual or constructive. *See Parker v. Renico,* 506 F.3d 444, 448 (6th Cir. 2007) (citing *People v. Hill*, 433 Mich. 464; 446 N.W.2d 140, 143 (1989)). "[A] person has constructive possession if there is proximity to the [weapon] together with indicia of control." *Ibid.* The Sixth Circuit notes that "[c]onstructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *Ibid.* at 449 (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973), *abrogated on other grounds by Scarborough v. United States*, 431 U.S. 563 (1977)). Both actual and constructive possession of a weapon may be proven by circumstantial evidence. *See, e.g., United States v. Stafford*, 721 F.3d 380, 392 (6th Cir. 2013).

As the Michigan Court of Appeals thoroughly described, there was sufficient circumstantial evidence in the record from which the ALE could conclude that Bell had constructive possession of the firearms found in the vehicle. Therefore, there were reasonable grounds to find that the petitioner had violated the terms of his probation. Bell is not entitled to relief on his fifth claim.

III.

The petitioner's claims do not present a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d). The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: April 24, 2023